UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NIGEL LEE WHITTAKER #375383

          Plaintiff,          Case No. 2:13-cv-96

v.          HON. R. ALLAN EDGAR

UNKNOWN OBIDEN et al

          Defendant.
_____/

## MEMORANDUM OPINION

This case is before the Court on remand from the Court of Appeals. Plaintiff Nigel Lee Whittaker (Whittaker) is an inmate in the Michigan Department of Corrections (MDOC). Defendants Sgt. Matthew Obiden, Officer Patrick LaPointe, and Lt. Francis McMahon were at the time of the event giving rise to this case, MDOC correction officers at the Baraga Maximum Correctional Facility. Lt. McMahon has since retired. Whittaker's claim is that these officers violated his rights under the U.S. Constitution's Eighth Amendment by leaving him in restraints for approximately fifteen hours without a legitimate penological purpose. The Court has held a bench trial. This Memorandum Opinion is the product of that trial.

I.

On September 6, 2012, Whittaker received a major misconduct ticket for disobeying a direct order. Whittaker was later found guilty of this misconduct. He was consequently transferred to a temporary segregation cell. Upon arriving in his cell, Whittaker was evidently out of control because he destroyed the fire safety sprinkler

head in the cell.  This caused a fire alarm to go off and the cell to flood.  It also caused metal parts from the sprinkler head to be scattered around.

Defendants Obiden, LaPointe, and another officer were authorized by someone above them in the MDOC chain of command to remove Whittaker from his cell, put him in restraints, and bring him to the prison medical facility.  The court has viewed a videotape showing this entire process.  Whittaker's hard restraints were exchanged for soft restraints at the medical facility.  He was checked by a nurse to insure that they were not too tight.  The restraints included a belly chain.  Whittaker's hands were secured behind his back with handcuffs made of leather or some other non-metallic material.  Whittaker was then led back to his cell.  This was late afternoon on September 6.

With the restraints, Whittaker could move around, lie down on his side, get a drink of water and use the toilet.  He would not have been able to eat.  At meal time, Whittaker told Officer LaPointe that he did not want to eat.  If he had indicated a desire to eat, the officers would have altered his restraints to allow that.

Lt. McMahon came on duty at about 10:00 p.m.  At 12:25 a.m., on the 7th he checked on Whittaker, who was uncooperative.  McMahon checked again at 5:00 a.m. on the 7th to find that Whittaker still exhibited hostility.  McMahon recommended leaving the restraints on at that time.  Throughout the night, Whittaker was checked by other officers.  For example, at 10:26 p.m. on the 6th, Whittaker was found to be uncooperative.  At 11:00 p.m. on the 6th Whittaker was being disruptive and yelling loudly.  At 4:20 a.m. on the 7th, Whittaker was found to be very angry and uncooperative.  At no time did Whittaker ever complain to officers that he could not lie

down, use the toilet or drink water. The restraints were eventually removed prior to the breakfast meal.

II

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman,* 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim involving the use of restraints must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g., Whitley v. Albers*, 475 U.S. 312, 320-22(1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. at 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillan*, 503 U.S. 1, 6-7 (1992); *see also Wilkins v. Gaddy*, 559

U.S. 34, 37-38 (2010).  Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 7; *Wilkins,* 559 U.S. at 37.  In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials, " and any efforts made to temper the severity of the forceful response.  *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010).  Physical restraints are constitutionally permissible where there is penological justification for their use.  *Rhodes*, 452 U.S. at 346; *Hayes v. Toombs*, 16 F.3d 1219, *1, 1994 WL 28606 (6th Cir. 1994); *Rivers v. Pitcher,* 68 F.3d 475, *2, 1995 WL 603313 (6th Cir. 1995).

There was a legitimate penological purpose for putting Whittaker in restraints - and keeping him there for the night of September 6th and the early morning of the 7th. The restraints were necessary to prevent disruptive behavior and further destruction of property.  Whittaker had to be put in restraints in the first place to get his cell cleaned up and prevent the sprinkler head metal pieces from being used as or fashioned into weapons.

There is no indication whatsoever that the officer defendants acted out of obduracy and wantonness as required for an Eighth Amendment violation.  *Whitley*, 475 U.S. at 319.  They acted in good faith to maintain safety and discipline in the prison.  Further, Defendants Obiden and LaPointe left the prison at the end of their shift

at about 11:00 p.m on September 6th, Defendant McMahon did not come on duty until about 10:00 p.m. on that day.  So none of these defendants had input into Whittaker's restraint status for the entire 15 hours.  Moreover, neither Obiden, nor LaPointe had any authority to remove the restraints.

III.

In summary, Whittaker has not carried his burden of proof to show that he was subjected to cruel and unusual punishment under the Eighth Amendment.   A judgment will enter.


	IT IS ORDERED


Dated: 7/21/2015                             /s/ R. Allan Edgar
                                             R. ALLAN EDGAR
                                             UNITED STATES DISTRICT JUDGE